**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

JUAN PEREZ,

               Plaintiff,

   v.

CITY OF NEW YORK, JASON ARBEENY,
and John Does 1-10

               Defendants.

-----------------------------------------------------------------

**COMPLAINT**

Jury Trial Demanded

ECF Case No.

     Plaintiff Juan Perez ("Plaintiff" or "Perez") brings this action against Defendants the City of New York ("City"), former New York City Police officer Jason Arbeeny ("Arbeeny") and John Does 1-10 (collectively, "Defendants"). Plaintiff alleges, upon information and belief, the investigation of counsel and personal knowledge, as follows:

**PRELIMINARY STATEMENT**

     1.    The New York City Police Department's ("NYPD") sordid history of abusive, racist, and unconstitutional practices toward vulnerable and marginalized New Yorkers under the Guiliani and Bloomberg administrations is well known to this Court.

     2.    Equally well known to this Court is the sordid history of unconstitutional prosecutorial overreach and misconduct by the Kings County District Attorney's Office ("KCDAO") during the tenure of former District Attorney Charles J. Hynes ("Hynes"). *See e.g. Collins v City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013).

     3.    Plaintiff Perez was a victim of systemically unconstitutional practices by the NYPD and the KCDAO in decades past. Facing Rockefeller-era drug sentences in a system that invariably

1

credited the accounts of officers over those of impoverished persons of color, Perez had no choice but to plead guilty.

4. Individuals, like Plaintiff, labored under the weight of these unjust convictions and the stigma of their accompanying collateral consequences, including denial of housing, public benefits, employment opportunities, and family reunification.

5. In 2022, however, an investigation by the KCDAO – now led by a reform-minded District Attorney Eric Gonzalez ("Gonzalez") committed to righting the wrongs of his predecessor – uncovered a group of 13 NYPD officers who had committed serious misconduct relating directly to their job duties. This cabal of officers included Defendant Arbeeny.

6. As a result of this investigation, the People sought, and the New York State courts ultimately granted, writs of error coram nobis vacating judgments convicting a total of 378 persons of crimes based on the testimony of one or more of the disgraced officers. According to KCDAO, this mass exoneration was the sixth largest in American history. Upon information and belief, however, none of the affected individuals were notified of the People's motion or offered an opportunity to participate in the exoneration proceeding.

7. While the judgments against the 378 exonerated criminal defendants were vacated and the underlying accusatory instruments were dismissed, the writ of error coram nobis issued in each of the 378 cases explicitly refused to refund any fines, fees, assessments, restitution, or other assessments already paid by the exoneree in connection with the now-dismissed case.

8. Among the 378 people exonerated by District Attorney Gonzalez's initiative was Plaintiff Perez, who was falsely arrested and maliciously prosecuted by Defendant Arbeeny – a former police officer.

2

9. Given the City's well-documented deliberate indifference to and systematic encouragement of the unconstitutional patterns and practices that resulted in 378 New Yorkers being deprived of their Fourth Amendment rights, Plaintiff seeks to hold the City responsible for the malicious prosecutions created and tolerated by its employees in the NYPD and the KCDAO, including Defendant Arbeeny.

## JURISDICTION & VENUE

10. Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331 and 1343, as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

11. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. Pro. 57.

12. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) (2).

13. Plaintiff Perez's conviction was reversed on or about November 4, 2022.

14. A Notice of Claim was filed with the City of New York under General Municipal Law and acknowledged by the City of New York on February 1, 2023, under Claim Number 2023 PI 003515.

15. This action is commenced within one year and ninety days of the action accruing and is therefore timely.

## PARTIES

16. Plaintiff Juan Perez is a resident of the State of New York.

17. Defendant City of New York is a municipal corporation, incorporated in the State of New York, residing in all five boroughs of New York City. At all relevant times, the City acted

through its agencies the NYPD and the KCDAO to commit the acts alleged in this Complaint and was responsible for such acts.

18. Defendant Jason Arbeeny is a former officer of the NYPD. Upon information and belief, Arbeeny is a current resident of the State of New York.

19. Defendant DOES 1-10 are former NYPD Officers.

20. Defendant Arbeeny and DOES 1-10 are referred to herein as the Individual Defendants.

## ALLEGATIONS OF FACT

21. On May 20, 2006, Plaintiff Perez was arrested for sale and possession of heroin, under indictment number 9818-2006.

22. Prior to his arrest, Perez was buying take-out food on 59th Street in Brooklyn. He was accompanied by his friend Bobby.

23. While Perez was waiting for his food, Bobby left the restaurant and met a man named Nickels.

24. As Perez was waiting outside with the food, Bobby and Nickels returned to the restaurant.

25. Perez, Bobby and Nickels then proceed to walk towards Senator Street, at which point Nickels started talking about getting a "spike," and inquiring as to whether they still sold crack in the neighborhood.

26. Perez responded that they don't sell crack in this neighborhood and that is why he lives there, he then handed Bobby his food and told him he was going home.

27. On his way home, Perez cut through the 24-hour laundromat, and as he was in the parking lot, two undercover police officers told Perez to freeze.

28. Perez put down his bag of food, at which time Defendant Arbeeny approached Perez and punched him in the face, breaking his nose and eye-socket.

29. Arbeeny and the other officer then proceeded to wrestle Perez to the ground and handcuff him. Perez was then then placed in the back of a police van.

30. Perez was told by the officers that he had done a controlled sale of 3 bags of heroin and that it was an observed sale, but in fact, the officers did not find any heroin on Perez.

31. Perez was indicated and spent eight months and ten days in prison.

32. Upon information and belief, there was a felony charged that was never indicted.

33. After the felony was not indicted, in fear of what charges may have been able to have been brought again, Perez was offered a plea deal for time served.

34. Upon information and belief, thereafter, Perez pleaded guilty and was given time served.

35. On or about November 4, 2022, Perez's conviction was vacated on a motion by the People.

## Allegations Relating to the Claim

36. Upon information and belief, Perez was one of the 378 exonerated individuals was subject to criminal prosecution instituted without lawful probable cause and for malicious reasons.

37. Upon information and belief, former District Attorney Hynes and other policymakers or Defendant City exhibited deliberate indifference to the constitutional deprivations caused by the NYPD officers, including Defendant Arbeeny, and assistants in the KCDAO, including:

   a. Pursuing and stopping individuals regardless of probable cause in order to inflate officer's arrest statistics;

    b. Pursing and stopping innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing;

    c. Fabricating evidence in order to cover up police misconduct, including excessive force;

    d. Using excessive force, including negligent and reckless behavior while in pursuit;

    e. Destruction of evidence in order to conceal police misconduct;

    f. Falsely reporting and documenting searches and the results of searches;

    g. Falsely testifying in court;

    h. Failing to properly train police officers and assistance district attorneys; and

    i. Planting evidence.

38. Both the NYPD and the KCDAO were aware of the foregoing conduct of Defendant Arbeeny, as well as other officers and assistants in the District Attorney's Office, and did absolutely nothing to stop the conduct, reprimand the officers, or safeguard the rights of their arrestees, notwithstanding the fact that at least 378 arrests were achieved due to a flagrant disregard of constitutional rights. Indeed, as demonstrated by multiple rulings in this Court and others, the KCDAO had a de facto policy of ignoring the constitutional rights of accused under former District Attorney Hynes.

39. The conduct of Hynes persisted as he served as District Attorney for over two decades, from 1990 to 2013. The National Registry of Exonerations (a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law), lists numerous exonerations during the "Hynes Era," twenty-five of which prosecutorial conduct was deemed a primary or contributing factor. Several high-profile cases have been overturned because it has been demonstrated that

6

Hynes' KCDAO were deliberately indifferent, a matter of de facto policy, to the constitutional rights of the accused.  *Collins v. City of New York*, 923 F. Supp. 2d 462 (EDNY 2013), *Kellner v. City of New York*, 2021 US Dist. 177698 (EDNY 2021).

40. This created an atmosphere which effectively encouraged constitutional deprivations by the NYPD (in the form of illegal searches, arrests, excessive force, false affidavits and malicious prosecutions), which the KCDAO assistants then ratified with prosecutions.

41. The combination of the NYPD over-aggressive policing, coupled with the KCDAO moving forward with the malicious prosecutions, created an environment where wrongful convictions were a more than highly infrequent occurrence.

42. As a result of the actions of the NYPD and Hynes' KCDAO, on September 7, 2022, the current Kings County District Attorney Gonzalez reversed these convictions in a ground breaking mass exonerations.  These exonerations occurred over a three-month period.  One of the exonerees is Plaintiff Perez.

## COUNT 1: 42 U.S.C. § 1983 – against Individual Defendants

### Violation of the Fourth and Fourteenth Amendments by Malicious Prosecution

43. Each of the Individual Defendants, while acting as NYPD officers and under color of law, maliciously instituted one or more criminal prosecutions without lawful probable cause to believe that an actual crime had been committed by Plaintiff.

44. This prosecution was terminated in favor of the accused Plaintiff.

45. Plaintiff was held in custody for over eight months due the prosecution instituted by the Individual Defendants.

46. By virtue of the foregoing conduct, the Individual Defendants engaged in malicious prosecution of Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

47. The Individual Defendants are accordingly liable for compensatory damages, punitive damages, and attorney's fees to Plaintiff under 42 U.S.C. §§ 1983 and 1988.

### COUNT 2: 42 U.S.C. § 1983 - against City Defendant

### Municipal *Monell* Liability for Individual Defendants' Constitutional Violations

48. The Individual Defendants, collectively and individually, while acting under color of law and in the employ and agent of the Defendant City, engaged in unconstitutional conduct (as fully described above) pursuant to a custom, usage, practice, procedure or rule of the Defendant City.

49. The aforementioned unconstitutional customs, policies, usages, practices, procedures, and rules of the Defendant City include, but are not limited to, the following:

   a. Pursuing and stopping individuals regardless of probable cause in order to inflate the officer's arrest statistics;

   b. Pursing and stopping innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing;

   c. Fabricating evidence in order to cover up police misconduct, including excessive force;

   d. Using excessive force, including negligent and reckless behavior while in pursuit;

   e. Destruction of evidence in order to conceal police misconduct;

   f. Falsely reporting and documenting searches and the results of searches;

   g. Falsely testifying in court;

    h.   Failing to properly train police officers and assistance district attorneys; and

    i.   Planting evidence.

50.     The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City and its agencies and agents constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

51.     The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

52.     The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

53.     The supervisory and policymaking agents and officers of the Defendant City, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and assistant district attorneys, including the Individual Defendants, and were thus directly responsible for the violation of Plaintiff's constitutional rights.

54.     The acts complained of deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## **CONCLUSION**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

    A.     An order awarding compensatory damages in an amount to be determined at trial;

    B.     An order awarding punitive damages in an amount to be determined at trial;

    C.     Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

D. Directing such other and further relief as the Court may deem just and proper, together with, interest, costs and disbursements of this action.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all of the triable issues of fact and damages stated herein.

Dated: February 2, 2024　　　　　　　　　Respectfully submitted,
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　*/s/ Frank Schirripa*
　　　　　　　　　　　　　　　　　　　　　Frank R. Schirripa, Esq.
　　　　　　　　　　　　　　　　　　　　　Kathryn A. Hettler , Esq.
　　　　　　　　　　　　　　　　　　　　　**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
　　　　　　　　　　　　　　　　　　　　　112 Madison Avenue, 10th Floor
　　　　　　　　　　　　　　　　　　　　　New York, New York 10016
　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 213-8311
　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 779-0028
　　　　　　　　　　　　　　　　　　　　　fschirripa@hrsclaw.com
　　　　　　　　　　　　　　　　　　　　　kh@hrsclaw.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*