UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JUAN PEREZ

                 Plaintiff,

v.

CITY OF NEW YORK

                 Defendant.

**MEMORANDUM AND ORDER**

24-cv-00808 (LDH) (TAM)

---

LᴀSHANN DᴇARCY HALL, United States District Judge:

Juan Perez ("Plaintiff") brings the instant action pursuant to 42 U.S.C. § 1983 against the City of New York ("Defendant") alleging a municipal liability claim under the framework established in *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) (a "*Monell* claim"). Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint in its entirety.

## BACKGROUND[1]

On May 20, 2006, Plaintiff went with his friend, Bobby, to order "take-out" food at a restaurant in Brooklyn, New York. (Am. Compl. ¶¶ 23-24.) At some point, Bobby left the restaurant while Plaintiff continued to wait for their order. (*Id.* ¶ 24.) After Plaintiff received their order, Plaintiff proceeded to give Bobby his food, at which point he "cut through [a] 24-hour laundromat" to reach a parking lot. (*Id.* ¶ 28.) Once in the parking lot, he was approached by two undercover officers who apprehended him. (*Id.* ¶¶ 28-30.) Ultimately, Plaintiff alleges

---

[1] The following facts are taken from the complaint as well as documents attached to and incorporated by reference into the complaint. *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (holding that when ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.").

that, although he was not in the possession of any drugs, the officers told Plaintiff that he was arrested for possessing three bags of heroin and for being observed selling heroin. (*Id.* ¶¶ 22, 29-32.) Specifically, according to the Complaint, officers at the scene, including former officer Jason Arbeeny ("Arbeeny") and officer Alfred Santersiro ("Santersiro") "planted heroin on [Plaintiff] and subsequently filed a false police report attesting that [Plaintiff] had three bags of heroin on him and that the officers observed him making a sale." (*Id.* ¶¶ 33.) In turn, Arbeeny and Santersiro misrepresented evidence to prosecutors, "failed to provide the prosecutors with material evidence or information, and/or gave testimony to the grand jury that was knowingly false or contained material omissions." (*Id.* ¶ 37, *see id.* ¶¶ 58-59.) According to the Complaint, "the prosecutors were aware of and/or had reason to be aware of the officers' misconduct" but "purposefully and willfully ignored such transgressions in order to get more convictions." (*Id.* ¶¶ 38, 60.)

Plaintiff was arraigned on May 21, 2006 (the or Plaintiff's "criminal proceedings"). (*Id.*, Ex. A at 2.) Then, in or around June 2006, Plaintiff was indicted on charges related to the criminal sale of controlled substances. (*Id.* ¶ 39.) However, due to a defect in the June 2006 indictment (the "2006 Indictment"), Plaintiff was charged with a superseding indictment on January 30, 2007, which charged Plaintiff with only a subset of the drug-related charges contained in the 2006 Indictment. (*Id.* ¶ 41.) The same day, Plaintiff—who had been in custody since his May 20, 2006 arrest—was arraigned on the superseding indictment and ultimately released on his own recognizance. (*Id.* ¶ 42.) On or about April 26, 2007, Plaintiff pleaded guilty to the charges asserted in the superseding indictment and was sentenced to time served. (*Id.* ¶¶ 43-44.)

On September 7, 2022, the Brooklyn District Attorney's Office ("Brooklyn DA's Office") issued a press release (the "2022 Press Release") stating, "Brooklyn District Attorney Eric Gonzalez today announced that his Conviction Review Unit will be asking the Court to vacate and dismiss 47 felony convictions and 331 misdemeanor convictions that were directly based on the work of 13 former New York City Police Department officers who were later found guilty of crimes that were committed while on duty," which included Arbeeny but not Santersiro. (Corsi Decl., Exhibit G ("2022 Press Release") at 1, ECF No. 28-7.)[2] The 2022 Press Release went on to state that, of the 378 cases where convictions were dismissed, "the vast majority of th[ose] cases [relate to] . . . possession of a controlled substance and other drug offenses" that "took place between 1999 and 2017." (*Id*. at 2.) It further states that, of these convictions, "[a]bout half" originate from "arrests (191) [that] were made by four officers who were implicated in the Brooklyn South Narcotics corruption scandal." (*Id*.) The 2022 Press Release also stated that "[c]ases [in which any of 13 ex-officers] acted as primary witnesses, and there was no other independent evidence to support a conviction, were flagged for dismissal." (*Id.* at 3.)

Following the 2022 Press Release, Plaintiff moved to vacate his conviction pursuant to a writ of error coram nobis. (Am. Compl. ¶ 45.) During a November 4, 2022 hearing (the or Plaintiff's "November 2022 proceeding"), the Government did not oppose Plaintiff's petition and stated that it "relied on the record that [it] made on calendar number eight, Reynaldo

---

[2] The Court considers the 2022 Press Release as integral to the Amended Complaint because Plaintiff indicated his reliance on the 2022 Press Release when drafting the Amended Complaint. (Pl.'s Opp'n at 7 (citing Am. Compl. ¶ 51)); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). However, it will not consider Plaintiff's arrest report and the buy report attached to Defendant's declaration because there is no indication that Plaintiff relied on these records in drafting the Amended Complaint, (*see* Am. Compl.), and Plaintiff expressly rejects having done so, (Pl. Opp'n at 10). *See Chambers*, 282 F.3d at 153 ("[W]e reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." (citation omitted).)

3

Canderlaria" (the "Canderlaria Case").  (*Id.*, Ex. B at 2:9-13.)  In the Canderlaria Case, the Government stated that it did not oppose the defendant's petition for writ of error coram nobis because, "in 2007[,] Arbeeny was convicted in Kings County on charges [related to police misconduct, and] . . . was involved in a material way in this defendant's case."  (Am. Compl., Ex. C ("Canderlaria's Record") at 2:12-3:1, ECF No. 12-3.)  The Government also stated on the record that it "had not discovered that the defendant's conviction was based on fabricated evidence or that the defendant is, in fact, innocent," and that "the [Government] ha[s] not discovered evidence to suggest that probable cause did not exist for the defendant's arrest."  (*Id.*, Canderlaria's Record at 3:7-16.)  Ultimately, the Court granted Plaintiff's petition for a writ of error coram nobis, ordering that his judgment of conviction be vacated and the indictment dismissed with prejudice.  (*Id.*, Ex. B at 2:14-17.)

## STANDARD OF REVIEW

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  A court considering a Rule 12(b)(6) motion must take the factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor.  *See id.*

4

**DISCUSSION**

In this action, Plaintiff seeks to hold Defendant liable for an alleged violation of his constitutional rights vis-à-vis a *Monell* claim.[3]  (Am. Compl. ¶¶ 65-80.)  Specifically, Plaintiff complains that he was maliciously prosecuted for possessing and selling heroin in violation of his constitutional rights.  (*Id.*; *see* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 5, ECF No. 30.)  By its motion, Defendant first argues that Plaintiff fails to plausibly allege a denial of his constitutional rights, thereby requiring the dismissal of his *Monell* claim.  (Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 8-13.)  That is, Defendant argues that Plaintiff's *Monell* claim must be dismissed because he fails to sufficiently allege a malicious prosecution claim as a matter of law.  (Def.'s Mem. at 9-13.)  The Court disagrees.

## I.      Plaintiff sufficiently alleged a malicious prosecution claim.

To state a malicious prosecution claim, the plaintiff must allege facts that, when taken as true, "show that: (1) the defendant [initiated] or continued a criminal proceeding against the plaintiff; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for commencing the proceeding; (4) the proceeding was instituted with "actual malice"; and (5) there was a post-arraignment restraint on the [plaintiff's] liberty sufficient to implicate his Fourth Amendment rights."  *Mangum v. City of New York*, No. 15 CIV. 8810 (PAE), 2016 WL 4619104, at \*7 (S.D.N.Y. Sept. 2, 2016) (citation omitted).

Against this backdrop, Defendant argues that Plaintiff fails to plausibly establish the first, third and fourth elements of a malicious prosecution claim in support of Plaintiff's *Monell*

---

[3] As discussed, *infra*, *Monell* claims seek to impose liability on a "municipality or other local government . . . if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted).

claim.[4]  (Def.'s Mem. at 8-14.)  With respect to the first element, Defendant argues that Plaintiff failed to allege facts that plausibly show that Arbeeny initiated the criminal proceedings against Plaintiff.  (*Id.* at 9-10.)  According to Defendant, this is because Plaintiff "do[es] not allege that [Arbeeny or Santersiro] did any more than report evidence to the prosecution or give testimony." (*Id.* at 10.)  As such, Defendant argues, Plaintiff's allegations are insufficient to rebut the presumption that prosecutors exercise independent judgment in deciding whether to initiate or continue criminal proceedings.  (*Id.*)  While Defendant's recitation of the law is accurate, its argument ignores the factual allegations in the Amended Complaint that wholly undermine its argument.

It is true that, generally, courts presume that prosecutors exercise independent judgment in deciding whether to initiate or continue criminal proceedings.  *Toussaint v. Cnty. of Westchester*, 615 F. Supp. 3d 215, 227 (S.D.N.Y. 2022).  However, the presumption is considered rebutted at the motion to dismiss stage where, as here, there are allegations "that a police officer provided false information to a prosecutor."  *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010); *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir.2007) ("[T]he chain of causation need not be considered broken if [a defendant government agent] deceived the subsequent decision maker or could reasonably foresee that his misconduct [would] contribute to an independent decision that results in a deprivation of liberty." (alteration in original) (citation and internal quotation marks omitted)).[5]  Put differently, the initiation element is sufficiently

---

[4] Defendant does not challenge whether Plaintiff plausibly established that the criminal proceedings terminated in Plaintiff's favor (the second element) or whether Plaintiff suffered a post-arraignment restraint sufficient to implicate his Fourth Amendment rights (the fifth element).

[5] Courts in this Circuit have also found that an "officer[] initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."  *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (citing *Llerando–Phipps v. City of New York*, 390 F.Supp.2d 372, 383 (S.D.N.Y. 2005)).  However, because Plaintiff does not allege Arbeeny engaged in any of this conduct, this alternative basis for satisfying the initiation element is of no moment.

established when a plaintiff plausibly alleges "that the defendant distorted the process by which the plaintiff was brought to trial." *Iosilevich v. Walmart Inc.*, No. 22 CV 4757 (VB), 2024 WL 168283, at *9 (S.D.N.Y. Jan. 12, 2024) (internal quotations and citation omitted).

Here, Plaintiff's alleges that: (1) he did not sell or receive money for any sale of heroin on the day of his arrest; (2) he was not in possession of drugs at the time of his arrest; and (3) the officers at the scene, including Arbeeny, planted heroin on him during his arrest and subsequently filed a false police report attesting that Plaintiff was in possession of said heroin and was observed selling heroin. (Am. Compl. ¶¶ 32-33.) These allegations, when accepted as true, support the reasonable inference that the independent judgment by the prosecutor was corrupted by the alleged conduct of Officer Abreeny. In other words, as pleaded, Abreeny initiated Plaintiff's criminal proceedings.[6] *See Paige-Bey v. City of New York*, No. 13CV7300, 2016 WL 7217197, at *8 (E.D.N.Y. Dec. 12, 2016) ("Plaintiff's allegations that the officers planted evidence and perpetuated false testimony to the grand jury and at trial are sufficient at [the motion to dismiss stage] to meet the first element of a malicious prosecution claim."); *Jones v. City of New York*, No. 13-CV-929 (ALC), 2016 WL 1322443, at *6 (S.D.N.Y. Mar. 31, 2016) (concluding plaintiff's allegations that officers wrote a false police report were sufficient to satisfy the first element at the motion to dismiss stage). As such, Plaintiff has established the first element of a malicious prosecution claim.

---

[6] Although Plaintiff alleges in the Amended Complaint that Officer Santersiros and Arbeeny initiated Plaintiff's Prosecution, Defendant aptly argues in its reply that Plaintiff abandoned any claim that Officer Santersiro initiated Plaintiff's Prosecution. (Def.'s Mem. Supp. Mot. Dismiss Reply at 2, ECF No. 31.) Indeed, Plaintiff merely argues that he has "sufficiently shown that officer Arbeeny initiated and/or continued Plaintiff's prosecution . . ." without asserting a single argument that Officer Santersiros did the same. (*See* Pl.'s Opp'n at 6-8.) As such, the Court deems any claim that Officer Santersiros initiated Plaintiff's prosecution abandoned. *See Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("'[w]hen a party fails adequately to present arguments' in a brief, a court may properly 'consider those arguments abandoned,' especially 'in the case of a counseled party' where 'a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.'" (internal quotations omitted)).

Next, Defendant argues that Plaintiff fails to allege facts that would allow an inference that the criminal proceedings were initiated against him without probable cause and with "actual malice"—the third and fourth elements, respectively.  Because "lack of probable cause generally creates an inference of malice," *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010 (internal quotations and citation omitted), and because Defendant merely argues that Plaintiff cannot show actual malice because the criminal proceedings were initiated with probable cause, (Def.'s Mem. at 13), the Court addresses Defendant's arguments as to both elements in tandem.

With respect to probable cause, Defendant correctly notes that, because Plaintiff was indicted by a grand jury, there is a presumption that probable cause existed for the initiation of the criminal proceedings against him.  (*Id.* at 10 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).)  This presumption, too, "may be rebutted by evidence of various wrongful acts on the part of police." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006).  Defendant maintains, however, that Plaintiff's allegations are too conclusory and speculative to rebut the presumption.  (Def.'s Mem. at 11-12.)  The Court disagrees again.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello*, 612 F.3d at 161-62 (internal quotations and citation omitted).  "Although a grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment thereby [may be] defeated, . . . th[is] presumption may be rebutted by evidence of various wrongful acts on the part of police." *McClellan*, 439 F.3d at 145.  For example, "evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" is sufficient to rebut the presumption that arises from a grand

jury indictment. *Savino*, 331 F.3d at 69 (citation and internal quotation marks omitted). As is relevant here, allegations that indictment was procured by fabricated evidence or false reports suffices to rebut the presumption of probable cause arising from an indictment. *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016); *see Li v. City of New York*, 246 F. Supp. 3d 578, 611-12 (E.D.N.Y. 2017) (holding that bad faith rebutted the presumption of probable cause where the plaintiff alleged that the defendants made false reports and fabricated witness statements even though they knew or had reason to know that plaintiff was innocent).

Accepting Plaintiff's allegations as true, there can be no question that the conduct the officers are alleged to have engaged in constitutes police conduct undertaken in bad faith. *See Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998) ("[I]t would be objectively unreasonable for [an officer] to believe he had probable cause to arrest [the plaintiff] if [the officer] himself fabricated the grounds for arrest.") Plaintiff alleges that the officers at the scene, including Abreeny, planted drugs on Plaintiff, arrested Plaintiff for possessing said drugs, filed a false police report attesting that Plaintiff possessed the drugs that were planted on him, and filed a police report stating that Plaintiff was observed making a sale that did not in fact occur. (Am. Compl. ¶¶ 32-34.) "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir.1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976).

Nonetheless, Defendant insists that Plaintiff's allegations amount to mere conjecture and speculation. (Def.'s Mem. at 10-11.) It seems that Defendant seeks to take advantage of the secrecy of Grand Jury proceedings. However, it is more than reasonable to infer that testimony

that Plaintiff was observed possessing and selling heroin were presented to the grand jury to secure his indictment.  *See Parker v. City of New York*, No. 09-CV-910 (JG), 2010 WL 1693007, at \*5 (E.D.N.Y. Apr. 28, 2010) ("New York law [does not] require[] plaintiff[s] to provide" a "detailed account of the precise mechanism whereby the grand jury was deceived" because "grand jury proceedings are secret and sealed")  In fact, the Court struggles to imagine how an indictment charging Plaintiff with possessing and selling heroin could be obtained without some evidence that Plaintiff was observed selling drugs or was in possession of heroin at the time of his arrest.  Accordingly, Plaintiff has alleged sufficient facts to rebut the presumption of probable cause and thereby establish an inference actual malice.  *Paige-Bey*, No. 13CV7300SLTRER, 2016 WL 7217197, at \*8 (concluding "allegations [of] officers plant[ing] evidence and perpetuat[ing] false testimony to the grand jury and at trial" were "sufficient to suggest both malice and an absence of probable cause"); *see Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (lack of probable cause generally raises an inference of malice).

To be sure, the three cases upon which Defendant relies fails to persuade the Court otherwise.  In each of those cases, the court dismissed the plaintiff's claims because the plaintiff failed to allege any facts concerning how an indictment was procured and/or failed to allege any facts concerning the form or substance of the evidence or information he claimed certain officers fabricated.  *See Demosthene v. City of New York*, No. 18-CV-1358, 2019 WL 181305, at \*5-6 (E.D.N.Y. Jan. 10, 2019) (explaining the plaintiff's only "non-conclusory allegation" in amended complaint "fail[ed] to provide sufficiently specific notice of the fabricated evidence's source or form"); *Scully v. City of Watertown, NY*, No. 7:03 CV 846, 2005 WL 1244838, at \*9 (N.D.N.Y. May 25, 2005) (granting the defendant summary judgment because the plaintiff failed to provide factual support for his argument that there was a lack of probable cause for his prosecution);

*Lewis v. City of New York*, No. 12-CV-2836 RRM RML, 2013 WL 6816615, at \*9 (E.D.N.Y. Dec. 24, 2013) ("Plaintiff alleges nothing about how his indictment was procured" and did "not allege any facts concerning the form or substance of the evidence or information he claims [the] [o]fficers fabircatred), *aff'd*, 591 F. App'x 21 (2d Cir. 2015). Neither is the case here. Plaintiff plainly alleges that his indictment was the result of officers fabricating evidence vis-à-vis planting drugs on him, as well as officers perjuriously reporting that they had observed him selling drugs despite Plaintiff not being involved in such a sale. (Am. Compl. ¶¶ 32-33.) Further, Defendant's argument that Plaintiff failed to definitively allege what occurred in the grand jury is not fatal to Plaintiff's claims. It is well settled that alleging facts on information and belief is sufficient where, as here, "'the facts are peculiarly within the possession and control of the defendant.'" *Thorpe v. Delta Air Lines, Inc.*, No. 25-58, 2025 WL 2868136, at \*2 (2d Cir. Oct. 9, 2025) (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018)).[7] And, there can be no question that grand jury testimony would be peculiarly within the possession and control of the Government—here, the defendant. *See Parker*, No. 09-CV-910 (JG), 2010 WL 1693007, at \*5 ("The viability of [plaintiff's] complaint is . . . unaffected by the Supreme Court's admonitions that only facts, and not legal conclusions[,] are entitled to the presumption of truth at the motion-to-dismiss stage" because "it would [be] unreasonable to

---

[7] Although, in *Thorpe*, the Second Circuit held the Plaintiff's "allegations on information and belief are insufficient to overcome the presumption of probable cause, and as a result, he has failed to state a malicious prosecution claim," the facts there are distinguishable from the case at bar. No. 25-58, 2025 WL 2868136, at \*2. In *Thorton*, just like in *Lewis*, the Court premised its holding on its underlying conclusion that the plaintiff's "failure to allege facts based on personal knowledge [was] inexcusable because [he] was present throughout an entire trial based on the indictment relevant [t]here" and still was unable to "identify any facts capable of plausibly suggesting that the grand jury indictment was improperly secured." *Id.*; *see also Lewis*, No. 12-CV-2836 RRM RML, 2013 WL 6816615, at \*1, \*9 (explaining that Plaintiff went to trial and was acquitted of all charges after presenting certain evidence and still failed to "allege any facts concerning the form or substance of the evidence or information he claims [the officers] fabricated") Here, Plaintiff did not have a trial, (Am. Compl. ¶¶ 43-44), and, as just discussed, alleged sufficiently specific facts to raise an inference of police conduct undertaken in bad faith, (*id.* ¶¶ 32-33).

11

require [plaintiff] to provide a detailed account of the precise mechanism whereby the grand jury was deceived.")

## II.     Plaintiff sufficiently alleges a *Monell* claim.

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick*, 563 U.S. at 60 (quoting *Monell,* 436 U.S. at 692). Critically, however, local governments "are not vicariously liable under § 1983 for their employee's actions." *Id.* at 60.  Instead, under § 1983, local governments are responsible only for "their *own* illegal acts." *Id.* (citation omitted).  That is, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury"—often referred to as a "*Monell* claim." *Id.* (quoting *Monell*, 436 U.S. at 692). "To plead a *Monell* claim, a plaintiff must allege (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *J.H. v. Bratton*, 248 F. Supp. 3d 401, 409 (E.D.N.Y. 2017) (internal quotations and citation omitted); *see Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (recounting the same elements).

With respect to the first element of a *Monell* claim, an "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.  To plausibly allege persistent and widespread practices in satisfaction of the first element, the "plaintiff must show that 'the alleged practice [was] so manifest as to imply constructive acquiescence of senior policymaking officials.'" *Hu v. City of New York*, 927 F.3d 81, 106 (2d Cir. 2019) (quoting *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006)).

12

Alternatively, a plaintiff may satisfy the first element by alleging a municipalities' failure to train certain employees in a manner that amounts "'to deliberate indifference to the rights' of persons with whom the untrained employees come into contact." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (alterations and internal quotation marks omitted) (citation omitted).  In these circumstances, the failure to train can be "properly thought of as a city 'policy or custom.'" *Connick*, 563 U.S. at 61 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).

Here, Plaintiff premises his *Monell* claim on two distinct theories that seek to establish an official policy or custom in satisfaction of the first element.  (Am. Compl. ¶¶ 65-80.) Specifically, Plaintiff alleges:  (1) "a *de facto* policy or custom of NYPD officers pursuing and stopping individuals regardless of probable cause and fabricating charges in order to inflate arrest statistics and meet quotas"; and (2) a "failure to properly train or supervise, amounting to a deliberate indifference of plaintiff's constitutional rights."  (Pl.'s Opp'n at 5 (citing Am. Compl. ¶¶ 65-80) (citation omitted).)  In challenging both theories, Defendant argues that Plaintiff's allegations with respect to either theory are merely "boilerplate" and too conclusory to withstand a motion to dismiss.  (Def.'s Mem. at 18.)  Not so.  Indeed, when denying a motion to dismiss a *Monell* claim, the Second Circuit explained "[t]he district court should grant such a motion only if, after viewing plaintiff's allegations in th[e] [requisite] favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992) (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119 (2d Cir. 1991)).  This is not the case here.

To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must "show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty America v. Town*

13

*of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (citation omitted).  A plaintiff "may adequately plead the existence of *de facto* customs or policies based on governmental reports documenting constitutional deficiencies or misconduct," *Felix v. City of New York*, 344 F. Supp. 3d 644, 658 (S.D.N.Y. 2018) (collecting cases), so long as those reports are "sufficiently connected to the specific facts of the [instant] case," *Gomez v. City of New York*, No. 16-CV-1274 (NGG) (LB), 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017).  In addition, a plaintiff may seek to establish a plausible inference by providing news articles that lend support to his allegations by referencing similar unlawful practices occurring around the same time as when the plaintiff was deprived of a constitutional right, notwithstanding a potential determination that these sources constitute inadmissible hearsay.  *Murphy v. City of New York*, 719 F. Supp. 3d 357, 373 (S.D.N.Y. 2024); *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) ("It is well established that '[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.'" (alteration in original) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  Where, as here, a plaintiff seeks to establish a permissible inference through both, the Court should analyze the plaintiff's allegations in connection with the materials attached to their complaint and assess whether, taken together, they support a plausible inference that municipal liability exists.  *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) ("It is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may . . . rely upon documents attached to the complaint as exhibits[ ]and documents incorporated by reference in the complaint"); *Roth*, 489 F.3d at 509 ("even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in

14

ruling on [a Rule 12(b)(6) motion to dismiss]" (alterations accepted) (internal quotations and citation omitted)).

In the instant action, Plaintiff's allegations plausibly establish a *de facto* custom or policy when considered with the exhibits attached to the Amended Complaint as well as the 2022 Press Release. According to the 2022 Press Release, 378 convictions were vacated and dismissed because certain officers, including Abreeny, were found guilty of crimes that had been committed while they were on duty, and these convictions could not have been achieved without those officers' serving as essential witnesses. (Corsi Decl., 2022 Press Release at 1.) Notably, "the vast majority" of the vacated and dismissed cases related to drug offenses that "took place between 1999 and 2017," which encapsulates the date of Plaintiff's arrest. (*Id.*, 2022 Press Release at 2.) The 2022 Press Release further states that, of these convictions, "[a]bout half" originate from "arrests (191) [that] were made by four officers who were implicated in the Brooklyn South Narcotics corruption scandal," (*id.*)—the same scandal that led to Arbeeny's indictment, (*see* Am. Compl., Ex. D at 2.). In addition, the 2022 Press Release acknowledges that Arbeeny was convicted of planting drugs on an innocent couple in 2007. (Corsi Decl., 2022 Press Release at 2.) Critically, this is the exact type of unlawful conduct that Plaintiff alleges Abreeny engaged in during his arrest.[8] (Am. Compl. ¶ 33.) Further, an article attached to the Amended Complaint indicates that, at Abreeny's sentencing, his attorney "blamed" Arbeeny's unlawful conduct on the "'enormous pressure' to meet arrest quotas," which further underscores the plausibility of Plaintiff's allegation of a *de facto* policy or custom of NYPD officers

---

[8] The 2022 Press Release clarified that it "'ha[d] not identified any information or evidence indicative of innocence or of fabricated evidence . . .'" in the 378 vacated and dismissed convictions, which included Plaintiff's conviction. (Corsi Decl., 2022 Press Release at 2.) However, it is axiomatic that lack of identification of something is not conclusive of whether, in fact, the vacated and dismissed convictions were initially attained through unlawful conduct, like planting drugs.

operating in a manner that sought to inflate arrest statistics and meet quotas. (Am. Compl., Ex. D at 3.) What is more, a NY Daily News article attached to the Amended Complaint indicates that former NYPD narcotics detective, Stephen Anderson, testified to having observed "multiple times," or "a lot," a "practice . . . [of officers] taking someone who was seemingly not guilty of a crime and laying drugs on them." (Am. Compl., Ex. E at 3.) Again, this is the same unlawful conduct that Plaintiff alleges Abreeny subjected him to, and it corresponds with the alleged *de facto* policy or custom of NYPD officers fabricating charges in order to inflate arrest statistics and meet quotas. (*Id.* ¶ 68.) In addition, former NYPD detective Anderon's statements that he observed this "a lot" supports an inference that fabricating evidence was a widespread practice within the NYPD. (Am. Compl., Ex. E at 3.)

Assessing Plaintiff's allegations of the misconduct he was subjected to as a whole, (*see* Am. Compl. ¶¶ 32-33), coupled with the representations just referenced, the Amended Complaint raises a plausible inference that municipal liability may exist here, at least at the motion to dismiss stage. *See Medina v. City of New York*, No. 19-CV-9412 (AJN), 2020 WL 7028688, at *7 (S.D.N.Y. Nov. 30, 2020) (concluding that the plaintiff's *Monell* claim was substantiated by the court's assessment of "the [p]laintiff's allegations as a whole, the number of lawsuits challenging [the *de facto* policy at issue there], the discussions and findings in the numerous CCRB reports, and the longstanding and widespread notoriety of the [relevant] issue" alleged). Indeed, dismissing Plaintiff's claim would do violence to the principle adhered to in *Walker v. City of New York*, where the Second Circuit reversed the district court's dismissal of a *Monell* claim at the motion to dismiss stage because it "d[id] not appear 'beyond doubt' that [the plaintiff] [could not] prove [the] 'set of facts [referenced in his complaint] in support of his claim which would entitle him to relief.'" 974 F.2d at 301 (citation omitted); *see id.* at 298 ("in

16

reviewing a motion to dismiss on the pleadings," . . . [t]he district court should grant such a motion only if, after viewing plaintiff's allegations in th[e] [requisite] favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") This is all the more so considering the government, itself, specifically tied officer misconduct to the dismissal of Plaintiff's conviction. (*See* Am. Compl., Ex. B; *Id.*, Ex. C.) Indeed, in not opposing Plaintiff's conviction being vacated and dismissed during the November 2022 proceeding, the government noted it relied on the record it made in the Canderlaria Case. (*Id.*, Ex. B.) And, in the record made in the Canderlaria Case, the government indicated that it did not oppose the plaintiff's conviction being vacated and dismissed in light of Abreeny having been convicted of officer misconduct. (*Id.*, Ex. C.) Like the plaintiff in *Walker*—here, Plaintiff "should be allowed to pursue discovery in order to determine whether" there is sufficient proof to support his allegations that, when accepted as true, make plausible that policymakers were aware of, but were deliberately indifferent to, Arbeeny-like-officer's unconstitutional actions. *See Walker*, 974 F.2d at 301. This is because, as Plaintiff notes, notwithstanding "*Walker* being decided pre-*Twombly* and *Iqbal*," *Walker* remains good law. (Pl. Opp'n at 18 (collecting cases).)

Plaintiff has also pleaded sufficient facts to survive Defendant's motion to dismiss on his second theory of liability: Failure to train or supervise in a manner that amounts to deliberate indifference. To establish an official custom or policy under a deliberate indifference theory, the plaintiff's allegations must plausibly establish the following three requirements: "[i] a policymaker knows to a moral certainty that city employees will confront a particular situation; [ii] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult *or* there is a history of employees mishandling the situation;

17

and [iii] the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Wray v. City of New York*, 490 F.3d 189, 195-96 (2d Cir. 2007) (quoting *Walker*, 974 F.2d at 300) (internal quotations omitted). "Where the proper response— to follow one's oath, not to commit the crime of [falsifying evidence], and to avoid [arresting] the innocent—is obvious to all without training or supervision, [however,] then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Walker*, 974 F.2d at 299-300. Nevertheless, as Plaintiff aptly argues, this rule generally does not apply to actions involving allegations of a history of conduct rendering the assumption untenable. (Pl.'s Opp'n at 16-17 (citing *Noonan v. City of New York*, No. 14CV4084, 2015 WL 3948836, at *4 (S.D.N.Y. June 26, 2015).) That is, "[w]hile it is reasonable for city policymakers to assume their employes possess common sense, where there is a history of conduct rendering this assumption untenable, city policy makers may display deliberate indifference by" continuing to rely on this assumption. *Walker*, 974 F.2d at 300.

Here, Plaintiff's allegations plausibly support an inference that, around the time of his arrest, there was a history of fabricating evidence and reporting said evidence in police reports. Specifically, the inference that there was a history of fabricating evidence to which policymakers were deliberately indifferent is circumstantially supported by the 2022 Press Release representing that "a vast majority of" the 378 vacated and dismissed convictions related to drug offenses involving a corrupt police officer, (Corsi Decl., 2022 Press Release at 2), the specific news reports acknowledging a corruption scandal around the period of Plaintiff's arrest that implicate the same NYPD narcotics unit covering the area in which Plaintiff's arrest occurred (Am. Compl., Ex. E at 2, Ex. D at 2), and a former detective's confirmation under oath that he

18

observed a practice of planting drugs on innocent individuals "a lot," (*id.*, Ex. E at 3). *See*

*Walker*, 974 F.2d at 300; *Medina*, No. 19-CV-9412 (AJN), 2020 WL 7028688, at *6 (regarding

complaints, news articles, and reports as providing a sufficient basis to infer deliberate

indifference).

Finally, Plaintiff adequately alleges causation to survive a motion to dismiss, and

Defendant presents no arguments to the contrary. With respect to the causation element, Plaintiff

must allege that the policy or custom in question proximately caused (or were the "moving

force" behind) the constitutional violation. *Stern v. City of New York*, No. 12-CV-5210, 2015

WL 918754, at *4 (E.D.N.Y. Mar. 3, 2015). As such, Plaintiff must show that the challenged

policy or custom was the but-for cause of the alleged deprivation of a constitutional right.

*Hernandez v. United States*, 939 F.3d 191, 207-08 (2d Cir. 2019) (asking if the challenged policy

was the but-for cause of the alleged injury). Here, accepting Plaintiff's allegations as true, the

Court finds it reasonable to infer that, but-for the *de facto* policy or custom of officers fabricating

evidence around the time of Plaintiff's arrest, or but-for the alleged inadequacy of supervision

over police officers around the time of Plaintiff's arrest, Plaintiff would not have been detained

for eight and a half months, purportedly in violation of his Fourth Amendment rights.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is

DENIED.

SO ORDERED.

Dated: Brooklyn, New York
     March 31, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge

19